UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KAY POWERS | *CIVIL ACTION NO. 6:16-0638 |
| VERSUS | *JUDGE DOHERTY |
| BEACON CMP CORP., ET AL. | *MAGISTRATE JUDGE HANNA |

<u>REPORT AND RECOMMENDATION</u>

Pending before the undersigned is the plaintiff's Motion to Remand this suit to the 15th Judicial District Court for Lafayette Parish, Louisiana. [rec. doc. 10]. Colgate-Palmolive Company and Johnson & Johnson filed Opposition and Cyprus Amax Minerals Company, Imerys Talc America, Inc., Beacon CMP Corp. and Whittaker, Clark & Daniels, Inc. have adopted that Opposition. [rec. docs. 23, 24, 26, 29, 34 and 35]. Plaintiff has filed a Reply. [rec. doc. 40]. Oral argument on the Motion was set for July 26, 2016. However, because plaintiff requested expedited consideration given the plaintiff's medical condition, oral argument was canceled and the Court advised that a Report and Recommendation would issue as promptly as possible after submission of the defendants' opposition. [rec. docs. 9 and 12].

For the following reasons, **IT IS RECOMMENDED** that the plaintiff's Motion to Remand be **GRANTED**, and this lawsuit be remanded to the 15th Judicial District Court for Lafayette Parish, Louisiana.

## BACKGROUND

Plaintiff Kay Powers ("Powers"), a Louisiana citizen, filed this lawsuit in Louisiana state court against Beacon CMP Corp., Brenntag North America, Inc., Brenntag Specialties, Inc., f/k/a Mineral and Pigment Solutions, Inc., Colgate-Palmolive Company ("Colgate"), Cyprus Amax Minerals Company and Imerys Talc America, Inc., Johnson & Johnson ("Johnson"), Whittaker, Clark & Daniels, Inc., and Teche Drugs & Gifts ("Teche"), claiming damages for injuries as a result of exposure to allegedly defective asbestos containing talc products between 1960 and 1985.  Powers alleges that she contracted mesothelioma from personal and familial use of cosmetic talc products over a twenty-five year period  between 1960 and 1985 at her homes in Lafayette, Louisiana and Panama City, Florida.

Powers alleges collectively and without differentiation in paragraph X of her Complaint that all defendants are "miners, manufacturers, sellers, users, distributers and or suppliers of asbestos products and were engaged in the business of using, manufacturing or facilitating the manufacture of asbestos products, or representing themselves as manufacturers of asbestos products, or were professional vendors of asbestos or asbestos containing products. . . ." [rec. doc. 1-

2, pg. 3, ¶ X [1]]. In paragraph V, Powers alleges that "[e]ach defendant corporation or its predecessor-in-interest, is, or at times material hereto, has been engaged in the mining, processing and/or manufacturing, installation, maintenance, sale and distribution of asbestos and asbestos containing products." [rec. doc. 1-2, pg. 2, ¶ V]. In the Motion to Remand, Powers refers to Teche as a non-manufacturer seller. [rec. doc. 7-1, pg. 14].

Powers alleges in paragraph VIII that her mesothelioma was "proximately caused by her exposure to asbestos from asbestos-containing products designed, manufactured, distributed, utilized and/or sold by Defendants" [rec. doc. 1-2, pg. 2-3, ¶ VIII[2]]. She further alleges in paragraph IX that "each exposure to such products caused or contributed to Plaintiff's injuries" [rec. doc. 1-2, pg. 3, ¶ IX].

In paragraph XI plaintiff alleges "The products mined, manufactured, sold, distributed, supplied and/or used by these Defendants was defective, unreasonably dangerous, and unreasonably dangerous per se, to Plaintiff who was intended and a foreseeable user and bystander who was exposed to these products." Powers also alleges causes of action collectively against all defendants in strict liability and negligence. [rec. doc. 1-2, pg. 3-4, ¶¶ XI and XIII].

---

[1] *See also* Exhibit B referenced in paragraph X which identifies Teche as one of the "Miner[]/Manufacturer[]/Seller[]/Supplier[]/Distributor[] Defendants".

[2] *See also* ¶VII "Plaintiff has suffered injuries proximately caused by her exposure to this asbestos-containing products designed, manufactured, distributed, utilized and/or sold by Defendants"

In paragraph XIII plaintiff alleges "The illness and disabilities of the Plaintiff is a direct and proximate result of the negligence of each Defendant and/or its predecessor-in-interest in that said entities, produced, sold, and/or otherwise put into the stream of commerce, asbestos, asbestos-containing products, which Defendants knew, or in the exercise of ordinary care, should have known were deleterious and highly harmful to Plaintiff's health and well-being" which allegation is followed by a list of various ways in which plaintiff alleges the defendants "were negligent in one, some and/or all" respects, including by failing to warn plaintiff "of the dangerous characteristics and serious health hazards associated with exposure to asbestos [and] asbestos-containing products. . . ." [rec. doc. 1-2, pg. 4, ¶ XIII(a)[3]]. In paragraph XIV, Powers alleges that "each and every one of the . . .Defendants were also negligent in engaging in the substandard conduct enumerated above and that this negligence was also a proximate cause of the Plaintiff's injuries." [rec. doc. 1-2, pg. 5, ¶ XIV].

Finally, Powers itemizes the damages she claims resulted from her asbestos-related lung disease which were the "direct, proximate and producing cause" of the defendants' conduct. [rec. doc. 1-2, pg. 5].

---

[3]Powers additionally asserts the defendants were negligent by failing to provide protective clothing, equipment and appliances to protect from asbestos exposure, inadequately warning on the containers of asbestos containing products, failing to publish, adopt and enforce a safe method for handling asbestos products, failing to develop and use a substitute material to eliminate asbestos, and failing to properly design and manufacture safe asbestos products for their reasonably anticipated use. rec. doc. 1-2, pg. 4, ¶ XIII(b)-(f).

4

It is undisputed that all defendants, with the exception of Teche which is a Louisiana citizen, are diverse non-Louisiana entities. On May 10, 2016, Johnson removed this lawsuit, alleging diversity jurisdiction under 28 U.S.C. § 1332(a). Johnson alleged that the citizenship of Teche must be disregarded as it was improperly joined because plaintiff has no reasonable basis for recovery against Teche under Louisiana law, and more specifically, under the LPLA or in tort as a non-manufacturer seller. [rec. doc. 1, ¶13-16].

The Motion to Remand was filed on May 31, 2016 in which Powers contends that the removing defendant has not satisfied its burden of establishing diversity jurisdiction under 1332(a) because Teche has been properly joined as a defendant.

## LAW AND ANALYSIS

"Federal courts are courts of limited jurisdiction. We must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916 (5th Cir. 2001); *Hussey v. Total Environmental Solutions, Inc.,* 2015 WL 7282073, *2 (W.D. La. 2015). Thus, the burden to establish jurisdiction in this court rests with the removing defendants.

**Removal and Diversity Jurisdiction**

The removal statute for diversity cases provides in pertinent part:

A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b)(2).

If there is a single defendant "properly joined and served" who is a citizen of the forum state present, removal on the basis of diversity jurisdiction is barred. In addition, in a case such as this with multiple plaintiffs and multiple defendants complete diversity is required. *Exxon v. Allapattah*, 125 S.Ct. 2611, 2617 (2005). A single non-diverse party "destroys original jurisdiction with respect to all claims" in the action. *Id.* at 2618. An exception to the rule of complete diversity applies when a non-diverse defendant is improperly joined in order to defeat the court's diversity jurisdiction. Therefore, whether in the context of the viability of removal or the subject matter jurisdiction of this court, the removing defendant must prove that Teche is improperly joined.

**Improper Joinder**

The Fifth Circuit has recognized two ways for the removing party to establish improper joinder: "actual fraud in the pleading of jurisdictional facts," or

an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Illinois Central Railroad Company,* 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*).[4] The removing party's burden is "heavy." *Smallwood,* 385 F.3d at 574. The Court views "all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff" and must resolve "[a]ny contested issues of fact and any ambiguities of state law" in the plaintiff's favor. *Davidson v. Georgia-Pacific, LLC*, 819 F.3d 758, 765 (5th Cir. 2016) *quoting Travis v. Irby,* 326 F.3d 644, 649 (5th Cir. 2003). The Court must "take into account the 'status of discovery' and consider what opportunity the plaintiff has had to develop its claims against the non[ ]diverse defendant." *Id. quoting McKee v. Kan. City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir.2004) (*quoting Travis*, 326 F.3d at 649).

The removing defendant does not contend that there was any fraud in the pleading of jurisdictional facts and focuses solely on the second basis for improper joinder. Under the second basis, the standard is:

> whether the defendant has demonstrated that there is *no possibility of recovery* by the plaintiff against an in-state defendant, which stated differently means that there is *no reasonable basis* for the district court to predict that the plaintiff might be able to recover against the

---

[4]In *Smallwood*, while sitting *en banc*, the Fifth Circuit adopted the term "improper joinder" rather than the term "fraudulent joinder" used in prior cases, noting that "there is no substantive difference between the two terms." *Id.* at 571 fn. 1.

7

in-state defendant.

*Smallwood,* 385 F.3d at 573 *citing Travis,* 326 F.3d at 648 (emphasis added; internal citation and quotations omitted).

The Fifth Circuit has recognized that a court may determine whether a plaintiff has a reasonable basis of recovery under state law in one of two ways. *Smallwood*, 385 F.3d at 573. "[T]he decision regarding the procedure necessary in a given case must lie within the discretion of the trial court." *Id.* A court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations in the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, improper joinder does not exist. *Id.*

In rare cases where a plaintiff has stated a claim, but has "misstated or omitted discrete facts that would determine the propriety of joinder", the court may, in its discretion, pierce the pleadings and conduct a summary inquiry by examining outside evidence. *Id.*; *McDonal v. Abbott Laboratories*, 2005 WL 957142, * 4, n. 6 (5th Cir. 2005). The evidence which a court may examine to determine whether the plaintiff has a reasonable basis of recovery against the non-diverse defendant includes affidavits. *Smallwood*, 385 F.3d at 573. The purpose of the inquiry is to identify the presence of discrete and undisputed facts

that would preclude plaintiff's recovery against the in-state defendant, such as "any fact that easily can be disproved if not true." *Id.* at 573-574 and fn. 12.

The standard differs from that applicable to summary judgment motions in that the "lack of substantive evidence as to the non-diverse defendant does not support a conclusion that he was improperly joined even though that may support summary judgment." *Davidson*, 819 F.3d at 767 *quoting Travis*, 326 F.3d at 650 and fn. 3 (internal citations and quotations omitted). "Instead, the defendant must put forward evidence that would negate a possibility of liability on the part of the nondiverse defendant." *Id.*

It is undisputed that both the plaintiff and Teche are citizens of Louisiana. The sole basis to oppose the remand is that there is no reasonable basis for, nor any possibility of, recovery by Powers against Teche, as a non-manufacturer seller. In support, Johnson provides the affidavit of Ryan Dartez, the current owner of Teche, who acquired the business in 2008. In his affidavit, Dartez states that he has no personal knowledge of any defects with the talc products at issue in this lawsuit, and that the prior owners of Teche did not convey any such knowledge to him. [rec. doc. 23-1]. Powers argues that, contrary to Johnson's allegations in its Notice of Removal, the LPLA is inapplicable to her claims because her exposure to asbestos products occurred before the LPLA was enacted. Johnson counters

9

that even under pre-LPLA law Powers has no reasonable basis for recovery against Teche.

Under pre-LPLA law, there was no cause of action for strict liability against a non-manufacturer seller like Teche.  Rather, strict liability attached only to manufacturers who placed unreasonably dangerous products on the market and those who the law equated with manufacturers such as makers of component parts of the final product, and suppliers of a defective product, because a manufacturer was presumed to know of the vices in things made. *Halphen v. Johns-Manville Sales, Corp.*, 484 So.2d 110 (La. 1986); *Rowell v. Carter Mobile Homes, Inc.*, 500 So.2d 748, 752-753 (La. 1987), *Philippe v. Browning Arms Co.*, 395 So.2d 310, 318 (La. 1980), *Rey v. Cuccia*.298 So.2d 840, 845 (La. 1974) and *Weber v. Fidelity & Casualty Co.*, 250 So.2d 754 (La. 1971).

A plaintiff's remedies against a simple seller were limited depending on whether the seller knew of the alleged defect, thereby distinguishing between good faith and bad faith sellers.  Thus, a "seller who neither knew nor had reason to know of the vice of the thing [was] not liable . . . for damages, but only for restitution of the price and expenses of the sale."  *Rowell,* 500 So.2d at 753 *citing* LSA C.C. art. 2531, *Cox v. Lanier Business Products, Inc.*, 423 So.2d 690, 693 (La. App. 1st Cir. 1982), *writ den.*, 429 So.2d 129 (La.1983), *Purvis v. Statewide*

*Trailer Sales, Inc.*, 339 So.2d 403 (La. App. 1st Cir. 1976), *Greenburg v. Fourroux*, 300 So.2d 641 (La. App. 3d Cir. 1974), *writ den.*, 303 So.2d 181 (La. 1974) and *Savoie v. Snell*, 213 La. 823, 35 So.2d 745 (La. 1948). Therefore, it was well settled that a non-manufacturer seller could not be liable for damages for selling a defective product unless he knew or should have known that the product was defective and failed to declare it. *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1414 (5th Cir. 1993) *citing Home Ins. Co. v. National Tea Co.*, 577 So.2d 65, 74 (La. App. 1st Cir. 1990)*, aff'd in part, rev'd in part on other grounds*, 588 So.2d 361 (La. 1991), *Cox*, 423 So.2d at 693; *Purvis*, 339 So.2d at 408 ; *Greenburg*, 300 So.2d at 646; *Savoie*, 35 So.2d at 828.

However, some Louisiana courts have recognized a duty on the part of a seller of a potentially dangerous product to warn of the possible dangers involved in using that product, athough the seller was not required to inspect a product prior to sale to determine the possibility of inherent vices or non-apparent defects. *Kelly*, 992 F.2d at 1414 *citing Hopper v. Crown,* 555 So.2d 46, 49 (La. App. 1st Cir. 1989), *reversed on other grounds*, 558 So.2d 1117 (La.1990), *American Ins. Co. v. Duo Fast Dixie, Inc.,* 367 So.2d 415, 417 (La. App. 4th Cir. 1979), *Hoffoss v. Ralston Purina Co.,* 341 So.2d 605, 606 (La. App. 2nd Cir. 1977); *Adams v. Owens-Corning Fiberglass Corp.,* 923 So.2d 118, 123 (La. App. 1st Cir. 2005);

*Nelton v. Astro-Lounger Mfg. Co.*, 542 So.2d 128, 131 (La. App. 1st Cir. 1989); *See also Harris v. Bardwell*, 373 So.2d 777, 780 (La. App. 2nd Cir. 1979) ("The seller does not have to make a minute inspection or disassemble the product to look for latent defects).

There is a narrow exception to this general rule of law if the seller, who may be deemed a "professional vendor", vouches for the product by holding it out as his own, or whose size, volume and merchandising practices render him responsible to the same extent as a manufacturer, and is thereby presumed to know the defects of his wares. *Chappuis v. Sears Roebuck & Co.*, 358 So.2d 926, 930 (La. 1978); *Hoerner v. ANCO Insulators, Inc.*, 812 So.2d 45, 59-60 (La. App. 4th Cir. 2002). A "professional vendor is a retailer who does more than simply sell a certain product or products; it must engage in practices whereby it is capable of controlling the quality of the product";  the doctrine was not intended to impose "liability on all retailers who are simply in the business of selling a product." *Nelton*, 542 So.2d at 132.

Viewing the allegations in Powers' Complaint in the light most favorable to her, the removing defendant  has failed to  satisfy its burden of demonstrating that there is no possibility of recovery by the plaintiff against Teche.

Johnson argues that Powers has failed to state a viable cause of action

against Teche because she did not allege that Teche knew or should have known that the talc products it sold were defective. This argument overlooks paragraph XIII of Powers' Complaint in which she alleges that the defendants "sold . . . asbestos-containing products. . . which the Defendants knew, or in the exercise of ordinary care, should have known were deleterious and highly harmful to Plaintiff's health and well-being."

Powers also alleges all of the remaining elements necessary to state a negligence claim against Teche under Louisiana law. Those elements are: (1) that the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) that the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) that the plaintiff suffered actual damages (the damages element). *Mathieu v. Imperial Toy Corporation*, 646 So.2d 318, 322 (La. 1994).

As set forth above, Louisiana law recognizes the duty of seller, under certain circumstances, to warn buyers of potentially dangerous products and the possible dangers involved in using that product. Powers alleges that duty was breached when Teche failed to warn her of the dangerous characteristics and

serious health hazards associated with exposure to talc products it allegedly sold to her. [¶13(a)]. Powers additionally asserts that Teche engaged in "substandard conduct enumerated above" which includes her failure to warn allegation. [¶ XIV]. Powers alleges that Teche's conduct caused and proximately caused her injuries, and mesothelioma. [¶ ¶VIII and IX]. Finally, Powers alleges that she suffered damages as a result of Teche's conduct. [rec. doc. 1-2, pg. 5]. While Johnson suggests that these allegations may ultimately be shown to lack evidentiary support, such an inquiry is inappropriate under the applicable standard of review or at this stage of the proceedings prior to discovery. *See Davidson, supra.*

In sum, under a Rule 12(b)(6)-type analysis, Johnson has not satisfied its "heavy" burden of demonstrating that Powers has no possibility of recovery against Teche. The allegations in the Complaint are enough to state a Louisiana state law negligence claim against Teche. Because the Complaint survives this analysis, there is no improper joinder. *Smallwood, supra*.

By submitting the affidavit of Dartez, Johnson apparently requests that this Court exercise its discretion to pierce the pleadings to conduct a summary-type inquiry. However, Johnson has not established that this is a "rare case" in which such an inquiry is properly undertaken. Powers has not "misstated or omitted discrete facts that would determine the propriety of joinder." *Smallwood, supra*.

The knowledge of Teche between 1960 and 1985 as to the possible dangers involved in using talc products is not "a fact that easily can be disproved if not true." *Id.* On the contrary, this argument is tantamount to the argument rejected by the Fifth Circuit recently in *Davidson* and earlier in *Travis*, that is, an argument that the plaintiff lacks substantive evidence at this early stage of the case does not support a conclusion of improper joinder. *Davidson*, 819 F.3d at 767 *quoting Travis*, 326 F.3d at 650.

This Court agrees with Powers that paragraph 12 of the Dartez affidavit is objectionable and contains allegations which may not be considered as proper evidence.[5] *See Gross v. Baltimore Aircoil Co., Inc.*, 2014 WL 1153706, *5-7 (S.D. Miss. 2014) (holding that Rule 56 standards, including competency of the evidence requirements, apply to affidavits submitted in connection with remand motions) *citing Cormie's Grocery & Deli, Inc. v. Colony Ins. Co.*, 2012 WL2906634, *5 and fn.7 (W.D. La. 2012) (other citations omitted). In paragraph 12, Dartez references "documents and paperwork he reviewed prior to or subsequent to his acquisition of . . .Teche" to support his attestation that such documents or paperwork did not include "any information regarding any known

---

[5] Powers additionally cites paragraph 11 as containing hearsay. However, the Court finds that the allegations do not constitute hearsay as the affiant merely states from his personal knowledge that information regarding Teche's knowledge of defects was not conveyed to him by the former owners. He does not say that he was told any information by them.

defect in any products sold by [Teche], including . . . cosmetic talc."  However, neither sworn nor certified copies of these documents and paperwork were attached to the affidavit.  Accordingly, the attestation may not be considered. *Ashton v. Superior Energy Services*, Inc., 2007 WL 1610776, *2 (W.D. La. 2007) *citing* former Rule 56(e), FRCP.[6]

Finally, even if the entirety of the Dartez affidavit is considered, the affidavit does not sufficiently establish facts which would preclude recovery against Teche.  Rather, the attestations establish only that Dartez, who did not acquire Teche until 2008, has no knowledge of any defects with cosmetic talc products, which bears little, if any, on Teche's liability to Powers as a seller of asbestos containing talcum powder decades prior to his acquisition of Teche. Stated differently, the affidavit sheds little, if any light, on whether the prior owners had such knowledge during the relevant time period.

In sum, after consideration of the affidavit, this Court is left with Powers' unchallenged factual allegations in her complaint about Teche's knowledge, which under the applicable standard, this Court must view in the light most favorable to

---

[6] Former Rule 56(e) was containing the requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration was omitted as unnecessary during the 2010 Rule Amendments given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record. *See* Advisory Committee Notes, 2010 Amendments.

Powers. Thus, Johnson has not satisfied its "heavy" burden of demonstrating that Powers has no possibility of recovery against Teche under a summary inquiry when the pleadings are pierced.

## CONCLUSION

Based on the foregoing, the removing defendant has not carried its burden of establishing that federal diversity jurisdiction exists in this case and that removal was proper. Accordingly, **IT IS RECOMMENDED** that the plaintiff's Motion to Remand be **GRANTED,** and this lawsuit be remanded tothe 15th Judicial District Court for Lafayette Parish, Louisiana.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the**

**District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

Counsel are directed to furnish a courtesy copy of a objections or responses to the District Judge at the time of filing.

Signed this 1st day of July, 2016, at Lafayette, Louisiana.

_____
**PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE**